

| | Serving Our Clients and Community For Over 100 Years | **Joseph Maddaloni, Jr.**<br>*Admitted in NJ & NY* |

**Joseph Maddaloni, Jr.**
*Admitted in NJ & NY*

Direct Line: 973-540-7330
Email: jmj@spsk.com

220 Park Avenue
PO Box 991
Florham Park, NJ 07932
Telephone: 973-539-1000
Fax: 973-540-7300

www.spsk.com

March 28, 2022

**VIA ECF**
Honorable Analisa Torres
United States District Court Judge
Southern District of New York
300 Pearl Street
New York, New York 10007

  **Re:** <u>Nyanwleh v. Prime Staffing LLC, et al., Case No.: 1:21-CV-06357 (AT)</u>

Dear Judge Torres:

  Our firm represents Defendant Prime Staffing LLC ("Prime Staffing") in the above-referenced matter. As Your Honor learned from the mediation office, the parties have reached an amicable resolution in this case.[1] Pursuant to Your Honor's Order, we submit this letter on behalf of all parties, to request that the Court review and approve the parties' settlement of Plaintiff Kamah Nyanwleh's ("Plaintiff" or "Nyanwleh") claims brought pursuant to the Fair Labor Standards Act ("FLSA") as fair and reasonable in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). A copy of the fully executed settlement agreement between the parties ("Settlement Agreement") is attached hereto as **Exhibit A.**

## PRELIMINARY STATEMENT

  This case concerns a dispute brought under the FLSA and the New York Labor Law ("NYLL"). On July 26, 2021, Nyanwleh filed a Complaint in this Court against Defendants Prime Staffing, the City of New York (the "City"), New York City Health and Hospitals Corporation ("H&H"), Lincoln Hospital Auxiliary, Inc. ("Lincoln"), Jacobi Medical Center Auxiliary, Inc. ("Jacobi"), (the City, H&H, Lincoln, and Jacobi, are together referred to herein as the "Municipal Defendants") and the New York and Presbyterian

---

[1] We ask that Your Honor respectfully note that it was always our intention to submit the settlement agreement to the Court for approval, pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) once we had obtained all of the final signatures from the various parties involved. We apologize to the Court for any confusion.



Honorable Analisa Torres
March 28, 2022
Page 2

Hospital ("NYP")[2] (all defendants together referred to herein as "Defendants"), on behalf of herself and all those similarly-situated, for the Defendants' alleged improper wage and house practices.

Plaintiff alleges she worked for Defendants as a nurse. Prime Staffing is a New York City-based staffing firm that specializes in temporary and full-time placements in healthcare. Plaintiff alleges that the Municipal Defendants contracted with Prime Staffing to hire various nurses and registered nurses and Plaintiff brings her Complaint on behalf of herself and others similarly situated. Plaintiff's Complaint consists of three principal allegations under the FLSA and the NYLL. First, Plaintiff, on behalf of herself and all those similarly situated, alleges that Defendants failed to pay wages for all hours worked. Specifically, Plaintiff alleges that Defendants engaged in a "time shaving policy and practice" such that not all compensable work was paid. Second, Plaintiff, on behalf of herself and all those similarly situated, alleges that Defendants failed to pay overtime wages owed. Specifically, Plaintiff alleges that Defendants improperly counted work at each hospital separately and also misclassify nurses as independent contractors. Finally, Plaintiff, on behalf of herself and all those similarly situated, alleges that Defendants fail to pay wages on time, fail to provide notices of pay rate, and fail to provide accurate wage statements.

Defendants deny all of the allegations Plaintiff has asserted against them and maintain they have not violated the FLSA or the NYLL in any respect. On or about November 4, 2021, Prime Staffing filed an Answer and Affirmative Defenses to the Complaint. The Municipal Defendants likewise filed an Answer and Affirmative Defenses on November 4, 2021. The New York and Presbyterian Hospital did not answer the Complaint and instead sent a pre-motion letter regarding Complaint defects as to it, in accordance with Your Honor's practices and rules.

The parties agreed to participate in mediation before mediator Robert Kheel, Esq.. In order to facilitate the mediation, Prime Staffing provided information and documents to the Plaintiff, including such items as her employee personnel file, internal pay records, schedules, and pay statements, and communications concerning pay discrepancies. The parties relied upon this information to assess the strengths and weaknesses of their respective positions, in terms of alleged liability and potential damages. Counsel for Prime Staffing and Counsel for Plaintiff participated in numerous calls and exchanged numerous emails, in which they discussed potential liability, as well as the proper method to calculate potential damages with respect to the Plaintiff. Ultimately, they were able to reach an amicable agreement prior to the scheduled mediation session with Mr. Kheel.

---

[2]    The New York and Presbyterian Hospital was erroneously sued and named herein as New York-Presbyterian Healthcare System, Inc. While there is a corporate entity known as New York-Presbyterian Healthcare System, Inc., it has no employees and does not operate the hospital campuses such as the one at which Plaintiff claims to have worked. As pled, the action is pending against an improper party. Furthermore, the claim asserted against The New York and Presbyterian Hospital arises only under state law (NYLL), and not the FLSA.



The Parties were able to resolve the Plaintiff's claims and agreed to settle the matter for a total sum of $80,0000 to be paid by Prime Staffing. No other party has payment obligations with respect to the Settlement Agreement. The settlement amount is to be distributed by Prime Staffing as follows:

- One check shall be made payable to "Dawkins & Warrington Law Group, LLC" in the amount of $26,666.66', representing attorneys' fees and costs, for which a Form 1099 will be issued to Plaintiff and Plaintiff's counsel; and,

- Two checks shall be made payable to "Kamah Nyanwleh"; one in the amount of $17,777.76 as alleged back wages, less any legally required taxes and withholdings, to be reported on a W-2 form, and one in the amount of $35,555.58 as alleged liquidated damages, to be reported on an IRS 1099 form.

Prime Staffing will disburse the settlement amount within ten days following this Court's approval of the Settlement Agreement. As described below, the parties submit that the Settlement Agreement represents a fair and reasonable resolution of the Plaintiff's FLSA claims asserted in the matter. Thus, the Parties jointly and respectfully request that the Court approve the Settlement Agreement.

## THE SETTLEMENT AGREEMENT IS FAIR AND REASONABLE

FLSA claims may be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. When analyzing a Rule 41 FLSA settlement, courts approve them "when they are reached as a result of contested litigation to resolve bona fide disputes." *Azogue v. 16 for 8 Hosp. LLC*, 2016 WL 4411422, at *5 (S.D.N.Y. Aug. 19, 2016) (citations omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case as an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Id.*

In evaluating a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The *Wolinsky* factors consider: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Id.* Where a FLSA settlement is deemed "fair and reasonable" by the Court, it should receive judicial approval. *Id.* Indeed, "there is a strong presumption in favor of finding a settlement fair, because the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal quotation marks omitted). Respectfully, each of these factors supports the fairness and reasonableness of the Settlement Agreement reached in this matter.



### A.    The Positions of the Parties.

In this matter, Plaintiff claims that she worked for Defendants as a nurse, and that throughout her employment, was not properly paid in accordance with the FLSA and the NYLL.[3]

With respect to violations of the FLSA, Plaintiff claims that Defendants failed to pay her overtime. She asserts that the FLSA requires Defendants to pay nurses one and one-half times their established rate of pay for all hours worked in excess of 40 hours in a workweek and that Defendants failed to do so. Plaintiff likewise contends that Defendants required her to provide 1099 information at the start of her employment but that she was always treated as an employee, and that she was paid overtime on some occasions by Defendants but not others. As a result of this purported misclassification, Plaintiff was denied overtime wages when she worked more than 40 hours in a week, as were others similarly situated.

To determine whether an individual is an employee, courts look to the "economic reality" of the working relationship. This inquiry requires a Court to assess the totality of the circumstances and consider "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (citation and internal quotation marks omitted). Courts also consider whether a worker has the ability to seek work from other employers, while continuing the working relationship with the defendant-employer. *Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 307 (E.D.N.Y. 2009). "[The degree of skill and independent initiative required to perform the work" also factors into the analysis. *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 912 (S.D.N.Y. 2013) (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058-59 (2d Cir. 1988)). These factors are not intended to comprise a "rigid rule for the identification of an FLSA employer. To the contrary, they provide a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible." *Irizarry* v. *Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013).

Prime Staffing[4] contends that Plaintiff's allegations are insufficient to establish that she was employed by it and that she was properly classified as an independent contractor for purposes of the FLSA for several reasons. First, Plaintiff presented herself to Prime Staffing as an Independent Contractor with an EIN and demanded to be paid by 1099. She was at all times treated by Prime Staffing as an Independent

---

[3]    The Parties do not seek approval to settle the Plaintiff's NYLL claims as there is no requirement for them to do so. Those claims, however, are covered by the settlement agreement and included as part of release provided by Plaintiff to Defendants.

[4]    The Municipal Defendants assert that they did not employ—jointly or otherwise—Plaintiff at any time. The Municipal Defendants contest Plaintiff's allegation that they are joint employers of Plaintiff and that they have any liability related to any alleged miscalculation or mistreatment of Plaintiff's hours by Prime Staffing.



Contractor. Because she was an Independent Contractor, she was responsible for her own scheduling, and she likewise had the ability to seek work from other employers should she desire. As an independent contractor, Plaintiff was not entitled to overtime pay. *Magnoni v. Smith & Laquercia, LLP*, 661 F. Supp. 2d 412, 416 (S.D.N.Y. 2009) ("independent contractors are exempt from the FLS"'s overtime provisions"). Because she was properly classified as an independent contractor, Plaintiff's claims with respect to overtime pay must fail.

Plaintiff also alleges in the Complaint that Defendants failed to timely pay wages in violation of the FLSA and that wages were regularly paid late. Under the FLSA, "late" wages are considered to be a form of "unpaid" wages. *Belizaire v. Rav Investigative & Sec. Servs.*, 61 F. Supp. 3d 336, 360 (S.D.N.Y. 2014); *see also Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 58 (2d Cir. 1998) ("courts have long interpreted [the FLSA] to include a prompt payment requirement"). However, here, it is Prime Staffing's position that any instances of Plaintiff's wages being delayed were a direct result of Plaintiff's own actions and inactions. The Plaintiff was required to submit her own compensable hours into the company's electronic system payroll system. Prime Staffing contends that any instances of late wages were only because Plaintiff did not submit her hours into the electronic system in a timely fashion.

## B.    <u>Compromise Reached on Contested Issues.</u>

Notwithstanding the difference in the Parties' respective positions regarding the Plaintiff's employment classification and other alleged improper wage and hour practices, they were able to reach an amicable resolution in this matter. Counsel for Plaintiff Nyanwleh and Counsel for Prime Staffing engaged in a number of settlement discussions. Prime Staffing made a settlement offer based on its calculations of what Plaintiff would likely receive if she was successful in prosecuting her claim (that is, back pay for 3 years, liquidated damages, and legal fees). This offer was rejected by the Plaintiff because, according to Plaintiff, it did not fully encompass her losses nor did Prime Staffing's offer give any consideration to a class-based settlement. Plaintiff made a counter-proposal, including two scenarios, one of which included the opportunity for Plaintiff to continue working for Prime Staffing, and the other included ending her relationship with Prime Staffing in exchange for a settlement payment.

Plaintiff rejected the option that included a continuing relationship with Prime Staffing. She also rejected the other option because the settlement amount proposed by Prime Staffing was too low. Thereafter, counsel worked cooperatively to close the gap between their respective client's positions, which led to the settlement that is the subject of this joint motion.

Based on the hours, wages, and damage calculations explained above, Plaintiff will receive a recovery that exceeds the FLSA actual and liquidated damages that she would otherwise receive on her best day should those claims proceed to trial. The settlement unquestionably represents a fair and reasonable



outcome, considering the alternative of lengthy and costly litigation for a recovery that would likely less based on Plaintiff's allegations. The compromise on method of damage calculation for Plaintiff is also fair and reasonable.

Moreover, the Settlement Agreement does not contain any terms that would militate against the Court approving it. For instance, the Plaintiff's release in paragraph 3 of the Settlement Agreement is limited to any wage-and-hour related claims that Plaintiff has or may have against Defendants, and does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015); *Lopez v. Nights of Cabiria, LLC*, 2015 WL 1455689, at *6-7 (S.D.N.Y. March 30, 2015). To the contrary, this release is narrowly tailored to release only claims relevant to the instant action. Likewise, the Settlement Agreement does not contain a confidentiality clause that unduly restricts Plaintiff's ability to discuss the settlement, or an overly broad non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood*, 2015 WL 4111668, at *1 (citing *Lopez*, 2015 WL 1455689, at *5); *Cionca v. Interactive Realty, LLC*, 2016 WL 3440554, at *3 (S.D.N.Y. Jun. 10, 2016) ("[w]hile not every non-disparagement clause in an FLSA settlement is *per se* objectionable, a clause which bars a plaintiff from making negative statements about a defendant must include a carve-out for truthful statements about a plaintiff's experience in litigating his case."). Here, the clause found in paragraph 3.5 of the Parties' Settlement Agreement contains that carve out.

**C.      Attorneys' Fees and Costs are also Reasonable.**

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Velazquez v. P.J.C.M. Rest. Corp.*, 2016 WL 4987156 (S.D.N.Y. Sept. 15, 2016) (citing *Mahalick v. PQ New York Inc.*, 2015 WL 3400918, at *2 (S.D.N.Y. Apr. 30, 2015)).[5] Attorneys' fees in FLSA settlements are examined, when examined, "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not]

---

[5]      Judge Pitman, however, recently found as follows: "I do not address the fee arrangement between plaintiff and their counsel because I do not believe I am required to do so under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), cert. denied, 136 S. Ct. 824 (2016). As described in *Cheeks*, the purpose of the FLSA is to regulate the relationship between an employee and her employer and to protect the employee from over-reaching by the employer. 796 F.3d at 206. I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counsel or to alter the freedom of contract between a client and his attorney." *Barbecho v. M.A. Angeliades, Inc.*, 2016 US. Dist. LEXIS 79247, at *7 n.4 (S.D.N.Y. June 16, 2016).



adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, Plaintiffs' counsel requests that the Court approve fees of $26,666.66 which represents one-third of the total settlement fund, which is routinely approved by courts in this circuit in FLSA settlements. *Beckman v. KeyBank, N.A.*, 293 F.R.D. 469, 477 (S.D.N.Y. 2013); *see also Ortiz v. Chop't Creative Salad Co., LLC*, 89 F. Supp. 3d 573, 584 (S.D.N.Y. 2015) ("courts in this circuit grant requests routinely for payment of one-third of the fund"); *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *7 (E.D.N.Y. Nov. 20, 2012) ("Request for one-third of the fund is reasonable and consistent with the norms of class litigation in this Circuit."); *Toure v. Amerigroup Corp.*, 2012 WL 3240461, at *5 (E.D.N.Y. Aug. 6, 2012) ("Class Counsel's request for one-third of the fund is reasonable and consistent with the norms of class litigation in this circuit."); *Johnson v. Brennan*, 2011 WL 4357376, at *13 (S.D.N.Y. Sep. 16, 2011) ("[t]he request for 33% of the Fund plus expenses is reasonable and well within the range approved by courts in similar cases."); *deMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *9 (S.D.N.Y. Aug. 23, 2010) (collecting cases awarding class counsel 33% of common settlement fund plus litigation expenses as reasonable.). Here, Plaintiffs' counsel's requested fee of $26,666.66 or one-third of the settlement here, is thus entirely reasonable.

Moreover, the reasonableness of these fees can be further solidified by "[a]pplying the lodestar method as a cross check" to ensure that counsel's fee award is not excessive in relation to the amount of work actually performed. *Guaman v. Ajna-Bar NYC*, 2013 WL 445896, at *8 (S.D.N.Y. Feb. 5, 2013) (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Goldberger*, 209 F.3d. at 50; *Aboud v. Charles Schwab & Co., Inc.*, 2014 WL 5794655, at *5 (S.D.N.Y. Nov. 12, 2014); *Fujiwara v. Shushi Yasuma Ltd.*, 58 F. Supp. 3d 424, 435 (S.D.N.Y. 2014); *In re Nassau County Strip Search Cases*, 12 F. Supp 3d 485, 491 (E.D.N.Y. 2014); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 991 F. Supp. 2d 437 (E.D.N.Y. 2014). When considering the lodestar cross-check, "[c]ourts regularly award lodestar multipliers from 2 to 6 times the lodestar." *Capsolas v. Pasta Resources Inc.*, 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012); *see also, e.g., Toure*, 2012 WL 3240461, at *5 (awarding multiplier of 3.53); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184-186 (W.D.N.Y. 2011) (awarding multiplier of 5.3); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *8-10 (E.D.N.Y. Jan. 20, 2010) (awarding multiplier of 3.3); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2001) (calling a multiplier of 4.65 "modest," "fair and reasonable"). Plaintiff's counsel will supply legal invoices should Your Honor request or require their submission in order to conduct a lodestar cross-check.



## **CONCLUSION**

In light of the foregoing, the Parties respectfully request that the Court approve their Settlement Agreement and approve the Stipulation of Dismissal filed herewith, dismissing this matter, with prejudice, except to retain jurisdiction to enforce the terms of the Parties' Settlement Agreement in the event of non-payment.

Thank you for the Court's consideration in this matter.

Respectfully submitted,

**SCHENCK PRICE SMITH & KING, LLP**
*Attorneys for Prime Staffing LLC*

By: _____*Joseph Maddaloni, Jr.*_____
Joseph Maddaloni, Jr.

cc:    Counsel of Record (via ECF)

# Exhibit A

DocuSign Envelope ID: 7FC63162-E99C-45E3-B697-9BD9EDA6B1E1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into between and among defendants PRIME STAFFING LLC, CITY OF NEW YORK, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, LINCOLN HOSPITAL AUXILIARY, INC., JACOBI MEDICAL CENTER AUXILIARY INC., THE NEW YORK AND PRESBYTERIAN HOSPITAL (sued herein as "NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC."), (hereinafter collectively "Defendants"), and Plaintiff KAMAH NYANWLEH (hereinafter "Plaintiff"). Each of the Defendants and Plaintiff is a "Party" and they are referred to collectively as the "Parties."

## RECITALS

**WHEREAS**, Plaintiff commenced the lawsuit entitled: *Kamah Nyanwleh, on behalf of himself and others similarly situated v. Prime Staffing, LLC, et al.,* Docket Number 21-CV-06357 (AT) in the Southern District of New York (the "Action") seeking payment for unpaid wages and overtime, liquidated damages, wage statement and wage notice violations, interest, attorneys' fees and costs against the Defendants pursuant to federal and state laws including the Fair Labor Standards Act of 1938, as amended ("FLSA"), and the New York Labor Law ("NYLL") and related regulations; and

**WHEREAS**, the Parties mutually desire to fully resolve and forever settle all of the claims asserted by the Plaintiff in the Action, for the purpose of avoiding the time, expense and inconvenience of further litigation; and

**WHEREAS**, the Parties are and have been represented by legal counsel at all times throughout the negotiation, preparation and execution of this Agreement, and the Parties have had a full and fair opportunity to consider this Agreement and review all of its terms with the assistance of such counsel;

**NOW, THEREFORE**, the Parties agree as follows:

## AGREEMENT

**1. DEFINITIONS** The terms set forth below shall be defined as follows:

**1.1.** Plaintiff. "Plaintiff" means Kamah Nyanwleh.

**1.2.** Plaintiff's Counsel. "Plaintiff's Counsel" means Clifford D. Dawkins, Esq., Dawkins & Warrington Law Group, LLC, 239 New Road, Suite B205, Parsippany, NJ 07054.

**1.3.** Defendants. "Defendants" means Prime Staffing LLC, City of New York, New York City Health and Hospitals Corporation, Lincoln Hospital Auxiliary, Inc., Jacobi Medical Center Auxiliary Inc., and The New York and Presbyterian Hospital (sued herein as "New York-Presbyterian Healthcare System, Inc."), unless otherwise separately identified.

DocuSign Envelope ID: 7FC63162-E99C-45E3-B697-9BD9EDA6B1E1

**1.4.** Defendants' Counsel. "Defendants' Counsel" means:

Joseph Maddaloni, Jr., Esq., Schenck, Price, Smith & King, LLP, 220 Park Avenue Florham Park, NJ 07932, on behalf of Prime Staffing, LLC;

Georgia M. Pestana, Esq., Corporation Counsel of the City of New York, 100 Church Street, 2nd Floor, New York, NY 10007-2601, on behalf of the City of New York, New York City Health and Hospitals Corporation, Lincoln Hospital Auxiliary, Inc., Jacobi Medical Center Auxiliary Inc. (Amanda C. Croushore, Esq. appearing);

John Houston Pope, Esq, Epstein Becker & Green, P.C., 875 Third Avenue, New York NY 10022, on behalf of The New York and Presbyterian Hospital (sued herein as "New York-Presbyterian Healthcare System, Inc.").

**1.5.** Parties. "Parties" means and refers to Plaintiff and Defendants.

**1.6.** The Litigation. "The Litigation" refers to the lawsuit captioned *Kamah Nyanwleh, on behalf of himself and others similarly situated v. Prime Staffing, LLC, et al.,* Docket Number 21-CV-06357 (AT) in the U.S. District Court for the Southern District of New York.

**1.7.** The Court. "The Court" refers to the Southern District of New York.

**1.8.** Settlement. "Settlement" means the terms of the settlement of this Litigation, which is embodied fully in this Agreement.

**1.9.** Negotiated Settlement Payment. "Negotiated Settlement Payment" means Eighty Thousand Dollars ($80,000.00).

## 2. SETTLEMENT PAYMENTS

### 2.1. Negotiated Settlement Payment and Distribution to Plaintiff

(a)     In consideration of Plaintiff's execution of this Agreement and the promises and covenants contained herein, and subject to the Court's approval of the Agreement pursuant to the requirements of the FLSA, Defendant Prime Staffing, LLC agrees to pay the Negotiated Settlement Payment of Eighty Thousand Dollars ($80,000.00), for the purpose of settling the Litigation. No other Party shall be responsible for paying the Negotiated Settlement Payment and Plaintiff shall have no recourse under this Agreement against any other Party if Prime Staffing, LLC should fail to make the Negotiated Settlement Payment. All portions of the Settlement Amount shall be delivered to Plaintiff's Counsel.

DocuSign Envelope ID: 7FC63162-E99C-45E3-B697-9BD9EDA6B1E1

(b)    The Negotiated Settlement Amount shall be paid within ten (10) business days following the Court's approval of this Agreement.  The Negotiated Settlement Amount shall be distributed as follows:

      a.    One check shall be made payable to "Dawkins & Warrington Law Group, LLC" in the amount of $26,666.66', representing attorneys' fees and costs, for which a Form 1099 will be issued to Plaintiff and Plaintiff's counsel; and,

      b.    Two checks shall be made payable to "Kamah Nyanwleh"; one in the amount of $17,777.76 as alleged back wages, less any legally required taxes and withholdings, to be reported on a W-2 form, and one in the amount of $35,555.58 as alleged liquidated damages, to be reported on an IRS 1099 form.

(c)    For all payments that will be reported on Form 1099 without any state or federal tax withholdings, the Plaintiff expressly understands and agrees that she will be solely responsible for the payment of all federal, state and local taxes due on that payment.  As a necessary precondition to any payment, Plaintiff must provide Prime Staffing, LLC with a properly completed, duly executed IRS Form W-9.  All settlement payments shall be made by check and shall be delivered to Plaintiff's Counsel.  Plaintiff further agrees that to the extent that any other federal, state or local taxes may be or become due or payable as a result of any of the above Form 1099 payments, she shall be solely responsible for paying them.  Plaintiff further acknowledges that she has not relied upon any representation made by Defendants or any of their representatives concerning the tax treatment of the payments.  Plaintiff agrees to indemnify Defendants from, and hold them harmless against, any claims made by any administrative agencies or courts of competent jurisdiction for any unpaid taxes specific to Plaintiff's receipt of the settlement payments.

(d)    Plaintiff hereby acknowledges and agrees that, after receipt of the Negotiated Settlement Payment she has been paid in full for all time worked through the date of this Agreement and is not entitled to any other form of compensation, including, but not limited to, any wages, bonuses, commissions, gratuities, payouts, severance pay, vacation pay, or other benefits, damages, attorneys' fees or costs from Defendants through the date of the execution of this Agreement, except as specifically provided in this Agreement.

## 3. RELEASES

    **3.1. <u>Claims Released by Plaintiff</u>.**  In exchange for the Negotiated Settlement Payment set forth in Section 2 of this Agreement, and other valuable consideration set forth elsewhere in this Agreement, Plaintiff, for herself and her attorneys, agents, executors, administrators, personal representatives, heirs, successors, any future estates, assigns and beneficiaries, and any and all of them (collectively, the "Releasors"), knowingly, voluntarily and with the advice of counsel, fully and forever releases, acquits, waives, and discharges the Defendants, their present or former officers, directors, subsidiaries, affiliates, partners, employees, agents, attorneys, accountants, executors, administrators, personal representatives,

DocuSign Envelope ID: 7FC63162-E99C-45E3-B697-9BD9EDA6B1E1

heirs, predecessors, successors and assigns, and any or all of them and all persons acting by, through, under, or in concert with any of them, in their personal, individual, official and/or corporate capacities (collectively the "Releasees"), from any and all claims asserted in the Complaint in the Action, including FLSA and NYLL claims arising up to and including the date of execution of this Agreement, whether known or unknown, whether contingent or non-contingent, specifically asserted or not, which the Releasors, or any of them, may assert anywhere in the world against the Releasees, or any of them, relating to FLSA violations or NYLL wage-and-hour claims arising as a result of Plaintiff's employment by or other association with Defendant Prime Staffing LLC and assignment to work at facilities operated by Defendants City of New York, New York City Health and Hospitals Corporation, Lincoln Hospital Auxiliary, Inc., Jacobi Medical Center Auxiliary Inc. and The New York and Presbyterian Hospital, or any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in the Litigation (collectively, the "Released Claims").

     **3.2.** <u>**Approval**</u>. This Agreement is subject to approval by the Court.

     **3.3.** <u>**Non-Admission of Liability**</u>. By entering into this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to Plaintiff, all such liability being expressly denied. Rather, Defendants enter into this Agreement to avoid further litigation and to resolve and settle all disputes with Plaintiff. The Parties understand and agree that neither this Agreement, nor the negotiations that preceded it, shall be used as evidence with respect to the claims asserted in the Litigation or in any other proceeding or dispute whatsoever.

     **3.4.** <u>**Complete Relief**</u>. The Parties acknowledge that this Agreement does not limit any Party's right, where applicable, and only to the extent such right cannot be waived, to file or participate in an investigative proceeding of any federal, state or local governmental agency, but the Plaintiff shall not seek any monetary damages, relief or recovery in any such proceeding.

     **3.5.** <u>**Mutual Non-Disparagement/Non-Disclosure**</u>.

     (a)    The Parties agree that they shall not make any statement or encourage any other individual to make any public or private "disparaging" statement or comments, including but not limited to written, verbal, or electronic communications, about the Plaintiff/Releasors, or the Defendants/Releasees to any individual or entity and/or to take any action, direct or indirect, that would otherwise be "disparaging". For purposes of this Agreement, the term "disparage" and/or "disparaging" shall mean and include, but not be limited to, any statement or action which might adversely affect the reputation of Plaintiff/Releasors or Defendants/Releasees. Plaintiff/Releasors further agree to refrain from discussing, disclosing or divulging the terms of this Agreement, or otherwise taking any action so as to encourage, induce, persuade or provoke any other person to file suit against the Defendants/Releasees, or which accuses the aforesaid individuals or entities of acting in violation of any law or government regulation or of conditioning any such action, or otherwise acting in an unprofessional, dishonest, disreputable, improper manner. However, this restriction shall not prohibit

DocuSign Envelope ID: 7FC63162-E99C-45E3-B697-9BD9EDA6B1E1

Plaintiff or Defendants from (i) making truthful statements regarding their experiences litigating this matter or (ii) enforcing their rights or remedies under this Agreement.

(b)      In the event of a breach by any Party of any of the obligations or restrictions contained in Paragraph (a) above, the non-breaching Party or Parties shall be entitled to injunctive relief as necessary and appropriate monetary relief to prevent any irreparable harm, together with a judgment against the breaching Party for any provable damages suffered by the non-breaching Party or Parties, including disgorgement of the Negotiated Settlement Payment, costs, expenses and attorney's fees, in addition to any other legal or equitable remedies available to the non-breaching Party or Parties.

3.6.  **Disputes; Damages**.  In the event of a dispute as to the interpretation, application, or violation of this Agreement, any Party may demand that any such dispute be resolved by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and each party hereby consents to any such disputes being so resolved.  Only those Parties between whom the dispute exists shall be made parties to any such arbitration.  Judgment on the award rendered in any such arbitration may be entered in the United States District Court, Southern District of New York.  In addition to any other legal and/or equitable remedies available to the Parties, the prevailing party in any such dispute shall be entitled to recover their reasonable attorneys' fees and costs incurred to enforce this Agreement.

## 4. DISMISSAL OF THE LAWSUIT

Plaintiff authorizes and instructs Plaintiff's Counsel to sign a Stipulation of Dismissal with Prejudice ("the Dismissal Order") in the form attached to this Agreement as Exhibit A, which shall be filed upon the Court's approval of this Agreement. The Parties shall direct their counsel to file a joint motion for approval of this Agreement in the United States District Court for the Southern District of New York as soon as practicable.

## 5. MISCELLANEOUS

5.1. **Entire Agreement**. This Agreement and any attachments, constitutes the entire Agreement between the Parties. All prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into and superseded by this Agreement.

5.2. **Binding Effect**. This Agreement shall be binding upon and inure to the benefit of the Parties.

5.3. **Neutral Reference**.  Unless required by law to provide a more comprehensive disclosure, upon request from a prospective employer or other entity made to Defendants, Defendant Prime Staffing LLC will provide a neutral reference confirming Plaintiff's dates of employment and position held and will further state that it is company policy to only provide this information.  Defendant The New York

DocuSign Envelope ID: 7FC63162-E99C-45E3-B697-9BD9EDA6B1E1

and Presbyterian Hospital shall respond that it has no record of any assignment of Plaintiff to any of its campuses. It is expressly understood and agreed that any required disclosure by Defendants pursuant to this paragraph shall not be grounds for a claim that Defendants violated the restrictions set forth in paragraph 3.5.

**5.4. <u>Arm's Length Transaction; Materiality of Terms</u>.** The Parties have negotiated the terms and conditions of this Agreement at arm's length, through authorized counsel. No term of this Agreement will be construed against any Party, as this entire Agreement is the result of arm's-length negotiations between the Parties. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

**5.5. <u>Captions</u>.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.6. <u>Construction</u>.** The terms and conditions of this Agreement have been negotiated by mutual agreement of the Parties. Therefore, the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any drafting Party.

**5.7. <u>Governing Law</u>.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, to create a full and complete settlement and waiver of claims. To the extent that the law of the United States governs any matter set forth herein, such Federal law shall govern and shall create a full and complete settlement and waiver of claims, as set forth herein.

**5.8. <u>Amendment</u>.** This Agreement may not be modified, altered, or changed except upon express written consent of the Parties wherein specific reference is made to this Agreement.

**5.9. <u>Effective Date</u>.** This Agreement shall become effective following its execution by the Parties and approval by the Court.

**5.10. <u>Attorney's Fees and Costs</u>.** Except as specifically provided in Paragraph 2.1 of the Agreement, each Party shall be solely responsible for its or their own attorneys' fees and costs in connection with the Litigation.

**5.11. <u>Fair and Reasonable Settlement</u>.** The Parties agree that this Agreement and the payments called for by this Agreement are fair and reasonable to all Parties, and that those payments and the other terms of this Agreement constitute a fair and reasonable settlement of the claims made in the Litigation. The Parties also agree that there was no undue influence, duress, overreaching, collusion or intimidation

DocuSign Envelope ID: 7FC63162-E99C-45E3-B697-9BD9EDA6B1E1

in reaching this Agreement, and that the Parties have sought and received the advice of competent counsel as to the meaning and effect of each of the terms of this Agreement before agreeing to sign it.

**5.12. Severability.** In the event that any provision of this Agreement or the application thereof should be held to be void, voidable, unlawful or, for any reason, unenforceable, the remaining portion and application shall remain in full force and effect, and to that end the provisions of this Agreement are declared to be severable.

**5.13. Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed as an original but all of which shall constitute one and the same instrument. Signature pages may be executed by "wet" signature *(i.e.,* using pen and paper) or electronic signature (e.g., via DocuSign). The executed signature pages may be delivered using facsimile or electronic means, including pdf or similar file type transmitted via email, cloud-based server, ore-signature technology.

**IN WITNESS WHEREOF**, the parties hereto knowingly and voluntarily executed this Settlement Agreement and Release as of the date(s) set forth below:

PLAINTIFF:

Kamah Nyanwleh

Date: 2/20/2022

DEFENDANTS:

Prime Staffing, LLC:

By: _____
       Michael Fazio, President

Date: 3/18/22

City of New York, New York City Health and Hospitals Corporation, Lincoln Hospital Auxiliary, Inc., Jacobi Medical Center Auxiliary Inc. Fairfield Family Care Holdings, LLC:

By: _____
       Amanda Croushore, Esq,
       Assistant Corporation Counsel

Date: February 16, 2022

The New York and Presbyterian Hospital (sued herein as "New York-Presbyterian Healthcare System, Inc"):

By: _____

Date: _____

**5.12. Severability.** In the event that any provision of this Agreement or the application thereof should be held to be void, voidable, unlawful or, for any reason, unenforceable, the remaining portion and application shall remain in full force and effect, and to that end the provisions of this Agreement are declared to be severable.

**5.13. Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed as an original but all of which shall constitute one and the same instrument.  Signature pages may be executed by "wet" signature *(i.e.,* using pen and paper) or electronic signature (e.g., via DocuSign). The executed signature pages may be delivered using facsimile or electronic means, including pdf or similar file type transmitted via email, cloud-based server, ore-signature technology.

**IN WITNESS WHEREOF**, the parties hereto knowingly and voluntarily executed this Settlement Agreement and Release as of the date(s) set forth below:

**PLAINTIFF:**

_____
Kamah Nyanwleh

Date:_____

**DEFENDANTS:**

Prime Staffing, LLC:

By:_____
        Michael Fazio, President

Date:_____

City of New York, New York City Health and Hospitals Corporation, Lincoln Hospital Auxiliary, Inc., Jacobi Medical Center Auxiliary Inc. Fairfield Family Care Holdings, LLC:

By:_____
        Amanda Croushore, Esq,
        Assistant Corporation Counsel

Date: _____

The New York and Presbyterian Hospital (sued herein as "New York-Presbyterian Healthcare System, Inc"):

By: _____
MariLou prado-Inzerillo (Feb 23, 2022 10:04 EST)
        MariLou Prado-Inzerillo, DNP, RN, NEA-BC
        Vice President, Nursing Operations

Date: ____2/17/2022_____

# Exhibit A

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| KAMAH NYANWLEH, on behalf of herself and others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>PRIME STAFFING LLC, CITY OF NEW YORK, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, LINCOLN HOSPITAL AUXILIARY, INC., JACOBI MEDICAL CENTER AUXILIARY INC., NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC., and DOES NOS. 1-10,<br><br>     Defendants. | Case No.: 1:21-cv-06357(AT) |

## <u>STIPULATION AND ORDER OF DISMISSAL WITH PREJUDICE</u>

IT IS HEREBY STIPULATED AND AGREED, by and between the parties, and ordered by the Court, that:

  (a) the parties' settlement, including the settlement of claims under the Fair Labor Standards Act, is fair and reasonable; and

  (b) the above-captioned action and all causes of action that were or could have been asserted therein, including any and all claims under the Fair Labor Standards Act, are dismissed *with prejudice* pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure and without costs, disbursements or attorneys' fees to any party; and

  (c) the Court shall retain jurisdiction of this matter for the sole purposes of enforcing the parties' settlement.

**DAWKINS & WARRINGTON LAW GROUP, L.L.C.**

By: *Clifford D. Dawkins, Jr.*
    Clifford D. Dawkins, Esq.
    239 New Road
    Suite B205
    Parsippany, NJ 07054
    (201) 919-5458
    Cliff@dawkinswarrington.com
*Attorneys for Plaintiff*

Dated:   2.28.2022

**SCHENCK PRICE SMITH & KING, LLP**

By: *Joseph Maddaloni, Jr.*
    Joseph Maddaloni, Jr.
    220 Park Avenue
    Florham Park, NJ 07932
    (973) 539-1000
    jmj@spsk.com
*Attorneys for Prime Staffing, LLC*

Dated:   3.28.2022

**EPSTEIN BECKER & GREEN, P.C.**

By: _____
    John Houston Pope, Esq.
    875 Third Avenue
    New York, NY 10022
    (212) 351-4500
    JHPope@ebglaw.com
*Attorneys for The New York and Presbyterian
Hospital (sued herein as "New York-Presbyterian
Healthcare System, Inc.")*

Dated:   Feb. 25, 2022

**CORPORATION COUNSEL OF THE CITY OF NEW YORK**

By: _____
    Amanda C. Croushore, Esq.
    100 Church Street
    2nd Floor
    New York, NY 10007-2601
    (212) 356-4074
    acrousho@law.nyc.gov
*Attorneys for the City of New York*

Dated:   February 16, 2022

**SO ORDERED:**

_____